## UNITED STATES

v.

**Robert A. TUNNELL, Jr., 339 54 6140, Quartermaster Seaman Apprentice (E–2), U.S. Navy.**

**NMCM 84 3513.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 8 March 1984.

Decided 13 Dec. 1984.

MAJ Patrick H. McGann, Jr., USMC, Appellate Defense Counsel.

LT Thomas H. Dinkelacker, JAGC, USNR, Appellate Defense Counsel.

MAJ J.S. Uberman, USMC, Appellate Government Counsel.

Before GREGORY, Senior Judge, and MITCHELL and BARR, Judges.

BARR, Judge:

Appellant was arraigned at a special court-martial upon a charge of desertion, in violation of Article 85, Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 885. The inclusive period of absence alleged within the charge was from 16 October 1979 to 13 January 1984. The charge was received by the officer exercising summary court-martial jurisdiction (OESCMJ) on 16 October 1981. At trial, appellant pleaded guilty to the charge and specification as a violation of Article 86, UCMJ, 10 U.S.C. § 886, for the total period alleged. No issue concerning the statute of limitations was raised at trial.

Appellant now contends before this Court that, under Article 43(c), 10 U.S.C. § 843, UCMJ, and in the absence of either evidence of waiver, as discussed in Paragraph 68c, *Manual for Courts-Martial, 1969 (Rev.)*, or the operation of one of the exclusions set forth in Article 43(d), UCMJ, his trial on the lesser offense was barred by the statute of limitations. Appellant correctly notes that there exists within the record of trial neither evidence of waiver by him of this claimed right nor the tendering of advice by the military judge that the statute of limitations could be asserted by him as a bar to trial. It is further conceded that the record does not affirmatively indicate that appellant was aware of the impact of Article 43(c), UCMJ, upon trial of the Article 86 offense.

In its initial response to appellant's claim of infirmity in the proceedings below, the Government conceded error in favor of appellant. Subsequently, however, the Government filed with the Court a supplementary citation of authority in which was urged our consideration of the decision announced by a different panel of this Court in *United States v. Reed*, 19 M.J. 702 (N.M.C.M.R.1984). The facts in *Reed* are virtually identical to those set forth above. In *Reed*, the unauthorized absence commenced on 30 June 1978 and the sworn charge was received by the OESCMJ on 30 June 1980. The Court in *Reed*, "finding no indication in the UCMJ or any military case law directly on point" on the issue of the "exact point at which the statute of limitations begins to run," looked to federal case law for guidance. *See* Article 36(a), UCMJ. Based on its survey of extant federal case authority, the Court concluded in *Reed* that "the period of a statute of limitations excludes the date of the offense and begins to run on the following day, concluding on the day necessary action is accomplished to toll the statute." Following that analysis, it was held that the two-year period of limitations started to run on 1 July 1978, establishing 30 June 1980 as the last day that the charge could be received by the OESCMJ within the statutory period.

If we were to apply the holding in *Reed* to the instant case, we would exclude 16 October 1979 as a countable day and find that 16 October 1981 was the last day that the sworn charge could be received within the two-year period of limitations. For reasons to be explicated herein, we agree with the ultimate conclusion in *Reed*—that trial was not barred by the statute of limitations—but choose a different analysis to achieve that result.

■ Initially, we conclude, as did the Court in *Reed*, that the term "year" should be defined as a " 'calendar year' totalling 365 days in normal years and 366 in a leap year." *See Gammons v. Domestic Loans of Winston-Salem, Inc.*, 423 F.Supp. 819 (M.D.N.C.1976).

While the statute of limitations, as a plea in bar of trial, has its origins in the common law, it is today, as a matter of federal law, governed entirely by statute. The pertinent federal statute, 18 USC § 3282, provides:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, *unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.* (Emphasis added.)

The very wording of this statute suggests the correctness of, and the basis for, the *underlying* holding announced in *Reed*, that is, that, *under federal law*, the statute of limitations begins to run the day *after* the offense is committed. From that date, the count continues forward to the date of indictment or information.

■ Under Article 36(a), UCMJ, 10 U.S.C. § 836, however, we are advised to only look to federal law—whether statutory or decisional—in the absence of a law or procedure specifically legislated by Congress or promulgated by the President for application to the administration of military justice. It is here that we part company with the analysis of *Reed*, for we find

Article 43(b) and (c), UCMJ, to be most explicit in stating the date on which the statute of limitations commences to run as to any offense, whether instantaneous, as in an unauthorized absence, or continuous, and in providing the intent of Congress as to the method of computing the period involved.[1] The pertinent portion of Article 43 applicable to the present case is section (c), which provides:

> Except as otherwise provided *in this article,* a person charged with any offense is not liable to be tried by court-martial ... if the offense was committed more than two years *before the receipt of sworn charges and specifications* by an officer exercising summary court-martial jurisdiction over the command.... (Emphasis added).

The exceptions noted "in this article," that is, Article 43, have no application to the present case. In construing the quoted Article, therefore, our attention must be focused upon the salient words, "committed more than two years before the receipt of sworn charges and specifications...." In contrast with the federal statute, which counts forward from the date *after* the offense was committed to the date of indictment or information, Article 43(c) advises us to start our period of computation on the day *before* the sworn charges are properly received and work back in time to the date of the offense. This necessarily means that the date of the commission of the offense is a countable day in determining the run of the statute of limitations.

The Government, in commendable candor, has directed our attention to *United States v. Lynch,* 22 U.S.C.M.A. 457, 47 C.M.R. 498 (1973), which appears to hold contrary to the conclusion reached in *Reed* and the construction of Article 43(c) we now espouse. The Court of Military Appeals in *Lynch* stated:

> To the extent that an unauthorized absence 'is complete' the moment the accused leaves his unit without authority, it is not a continuing offense. (Citation omitted.) For that reason, the statute of limitations begins to run against the offense at the moment of the inception of the absence, not its termination. (Citation omitted.)

*Lynch, supra,* 47 C.M.R. at 501. *See also United States v. Francis,* 15 M.J. 424, 427 (C.M.A.1983). While we indeed find *Lynch* to be inconsistent with *Reed,* we find no such inconsistency between it and the rule we have herein adopted.

The primordial legal issue in *Lynch* and *Francis* was not whether the statute of limitations had expired as to a stated offense, but, rather, whether a claim of double jeopardy would prevail at a second trial for a period of absence included within a greater period upon which those accused had earlier been tried and acquitted (*Lynch*) or as to which a finding had not been entered (*Francis*). The portion of the decision quoted above from *Lynch,* and referenced in *Francis,* was not, therefore, necessary to the resolution of the legal issues presented to the Court in those cases. We note that the Court of Military Appeals, in *Francis* and *Lynch,* neither referred to, nor predicated the above-quoted language upon a consideration of, Article 43(c). This difference in the nature of the legal issues addressed in *Lynch* and *Francis* and that presented in the case *sub judice* is, standing alone, a sufficient ground to distinguish the former from the instant case.

 We, however, need not rest our treatment of *Lynch* and *Francis* on so tenuous a ground. The language quoted from *Lynch,* in reality, reinforces two concepts, each of which has been a long-established principle of military jurisprudence:

---

1. It is clear that Congress, in drafting Article 43, did not intend to create, in sections (b) and (c), a mirror image of the rule then and now extant in federal law. Article 43(f) was specifically borrowed from, and incorporated as part of the UCMJ, 18 USC § 3287. If Congress had intended to also incorporate the rule of 18 USC § 3282, it certainly would have both indicated such intention as explicitly as it did with respect to Article 43(f) and chosen the wording of 18 USC § 3282, rather than that found in Article 43(b) and (c). *See* Index and Legislative History, Uniform Code of Military Justice, HH at 1044.

(1) That unauthorized absence is, by its nature, an instantaneous, not a continuing, offense—hence the Court's comment that the termination date of an unauthorized absence is an irrelevant focal point for determining the statutory period established in Article 43(b) and (c); and, (2) That the date on which an absence commences is to be counted as a day in which the statute runs against the Government for purposes of determining whether the statute was properly tolled. This, then, is the true distinction between the federal rule, which does not count the day of the offense within the statutory period, and the military rule, which treats the date of the commission of any instantaneous offense as a countable day and within the period governed by the statute.[2] Neither *Lynch* nor *Francis* reach beyond that proposition of law. Neither case submitted the language of Article 43 to direct judicial scrutiny in an effort to derive its meaning—being an act unnecessary to the appropriate resolution of those cases. Neither case explored or discussed the method to be applied—which method is prescribed in Article 43(b) and (c), UCMJ—for purposes of computing the running of the statutory period. Thus, neither *Lynch* nor *Francis* held, or were required to hold, as we do now, that the date of receipt of sworn charges by the OESCMJ is *not* a countable day within the context of Article 43(b) and (c), UCMJ—for purposes of computing the running of the statutory period. To reach a contrary conclusion would, in our opinion, require that we define the word "before," as used in Article 43(b) and (c), to be the equivalent of saying "from the date of." Such a construction would be an illogical distortion of the plain language chosen by the drafters of the Code in stating the rule of computation. By excluding the date of receipt of the sworn charge from, but including the date on which the offense was committed within, the statutory period, it becomes evident that *Lynch* and *Francis* are indeed consistent with the analysis of Article 43

which we have undertaken to announce. While we cannot now predict what result might obtain where the specific issue herein decided is the one focused for consideration before the Court of Military Appeals, we remain confident that the rule which we adopt is consistent with, and mandated by, the plain meaning of Article 43.

In summary, we hold that, in computing the period for applying the statute of limitations under Article 43(b) or (c), the date on which sworn charges are received by the OESCMJ is not to be counted as a day within the two or three-year statutory period, as applicable; whereas the date on which the offense is committed is a countable day within that period. The count begins, as day one, on the day immediately preceding—the day "before"—the date on which the sworn charge is received by cognizable authority and proceeds backward for 730 days for a two-year statutory period (or 731 days if a leap year is involved) or for 1095 days for a three-year statutory period (1096 for a leap year). Or, stated another way, the date on which the offense was committed is day one, and the count proceeds forward to the day "before (the date of) receipt." If that inclusive period equates to the running of 730 days (731 in leap year) under Article 43(c), or 1095 days (1096 in leap year) under Article 43(b)—or less—then the statute of limitations has been properly tolled. Utilizing the first method of computation and applying it to the facts of the instant case, 16 October 1981, the date the charge was received by the OESCMJ, is not counted. It therefore follows that 15 October 1981 is day one; 16 October 1980 is day 365; and 16 October 1979 is day 731 (1980 being a leap year). The same result obtains under the second method, for 15 October 1981, the day before the charge was received, was day 731 in the running of the statute—the last day (under the leap year computation) of the two-year statutory period.

2. For a continuing offense, the date which represents the last day of the continuing commission of the offense is treated as the countable day for purposes of applying Article 43(b) and (c), UCMJ.

824

Thus, the statute of limitations in this case was properly tolled and appellant possessed no protectable right under Article 43(c), UCMJ. It therefore follows that the military judge did not err in failing to advise appellant of his right to assert the statute as a plea in bar of trial.

Accordingly, the findings and sentence as approved on review below are affirmed.

Senior Judge GREGORY and Judge MITCHELL concur.